1 | ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
2 | Damian J. Martinez        State Bar No. 200159
      Damian.Martinez@aalrr.com
3 | Ivy Gao              State Bar No. 312267
      Ivy.Gao@aalrr.com
4 | 201 South Lake Avenue, Suite 300
Pasadena, California 91101-4869
5 | Telephone:  (626) 583-8600
Fax:  (626) 583-8610
6 |
Attorneys for Plaintiff Andrew Berman
7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 |

| | |
|---|---|
| 11   ANDREW BERMAN, an individual, | Case No. |
| 12         Plaintiff, | **COMPLAINT FOR** |
| 13   v. | 1. FRAUD |
| 14   NCM GROUP LLC d/b/a NCM | 2. BREACH OF FIDUCIARY DUTY |
| 15   WIRELESS f/k/a NCM WIRELESS INC., a Florida limited liability | 3. BREACH OF CONTRACT |
| 16   company, NCM WIRELESS HOLDINGS INC., a Florida | 4. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR |
| 17   Corporation, RAHMEEN FARUDI, an individual, ILAN DORON, an | DEALING |
| 18   individual; and DOES 1 through 50, inclusive, | 5. UNJUST ENRICHMENT |
| 19         Defendants. | 6. UNFAIR COMPETITION IN |
| 20 | VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, |
| 21 | ET SEQ. |
| 22 | **DEMAND FOR JURY TRIAL** |

23 |

24 |        Plaintiff, Andrew Berman, an individual, ("Plaintiff" or "Berman"), hereby

25 | brings this complaint against defendants, NCM GROUP LLC d/b/a NCM

26 | WIRELESS, formerly known as NCM WIRELESS INC ("NCM Group")., NCM

27 | WIRELESS HOLDINGS INC. ("NCM Group and collectively with NCM Holdings

28 | Inc., "NCM"), RAHMEEN FARUDI, individually ("FARUDI"), ILAN DORON,

individually ("DORON" and collectively with NCM and FARUDI, "Defendants"), and DOES 1 through 50 (Plaintiff and all defendants sued herein, collectively, the "Parties"), and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332 (a) because the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) and the Parties are citizens of different States.

2. The true names and capacities of those defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained pursuant to Fed.R.Civ.P. 15 (c)(3).

3. This is an action for damages and equitable relief.

4. Plaintiff Andrew Berman, an individual, is a citizen and resident of Los Angeles County, California.

5. Defendant NCM GROUP LLC d/b/a NCM WIRELESS, formerly known as NCM WIRELESS INC. ("NCM Group"), is a Florida limited liability company doing business in Miami-Dade County, Florida.  Pursuant to 28 USC 1332(c)(l), "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business" and that for purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership.  As stated below, NCM GROUP LLC's sole members RAHMEEN FARUDI and ILAN DORON.  DORON is a citizen of Florida and FARUDI resides in Florida and in Asuncion, Paraguay.

6. Defendant NCM WIRELESS HOLDINGS INC., is a Florida corporation doing business in Miami-Dade County, Florida.

7. Defendants NCM Group and NCM Wireless Holdings Inc. (collectively referred to herein as "NCM") do business interchangeably using both

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

017574.00008
32498841.1

names to conduct the same type of business as a means of confusing and perpetuating their ongoing fraud against the public.

8.   Defendant RAHMEEN FARUDI ("FARUDI"), an individual, is a resident of Asunción, Paraguay and Florida. On information and belief, FARUDI is an agent, officer, shareholder, and/or member of NCM.

9.   Defendant ILAN DORON, an individual, is a citizen and resident of Miami, Miami-Dade County, Florida.   DORON is an officer, shareholder, and/or member of NCM.

10.   Jurisdiction is proper in the State of California because the Investment Contracts (as further defined below) to Plaintiff expressly obligate payments to Plaintiff, a resident and citizen of California.

11.   Venue is proper in the Central District Court of California because Plaintiff is a resident of Los Angeles County and he interacted and did business with Defendants from this jurisdiction and Defendants solicited over $1,000,000 in funding from Plaintiff while Plaintiff was residing in Los Angeles County.

## GENERAL ALLEGATIONS

12.   NCM is a company that, as represented by the Defendants, buys electronic products such as mobile devices, computers, and game consoles to sell to wholesalers. NCM has described its business as follows:

> NCM Wireless is committed to provide world class service and are [sic] proud to be trusted by both buyers and sellers around the globe. We currently buy and sell into 48 different countries. Wholesalers and investors can benefit from the company's wide network of sales operations.
>
> We specialize in high demand products. The company is constantly involved in the dynamic market of the most

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

current and popular items. Mobile devices, computers, game consoles and more.

NCM's vision is to help wholesalers stay on top of an ever-changing global market by delivering the most sought-after products. As one of the leading brokers in the industry, we can always be trusted to provide our customers with the right products at the right time.

13.     On information and belief, FARUDI and DORON are agents, officers and owners of NCM.   In order for NCM to purchase products to sell to its wholesale customers, as alleged by the Defendant, NCM requires substantial capital.

14.     On information and belief, FARUDI and DORON manage NCM to defraud lenders, investors, suppliers and customers, among others, in order to achieve illegal personal gains.

15.     NCM, through FARUDI and DORON, obtains capital by raising money with lenders and investors.   Plaintiff is one of the lenders and investors who was defrauded by Defendants' scheme.   Specifically, Defendants, at the direction of FARUDI and DORON, defrauded Plaintiff into financing NCM through the use of various fraudulent misrepresentations and inducement.

16.     In fact, not including this lawsuit, five (5) other lawsuits have been brought against NCM and its officers, DORON and FARUDI, in which other plaintiffs alleged that NCM, FARUDI, and DORON failed to repay approximately ten million dollars total in promissory notes and personal guarantees.

**Defendants' Fraudulent Scheme**

17.     Beginning in early 2018, FARUDI reached out to Plaintiff and other investors, regarding a potential opportunity with FARUDI's company, NCM. Specifically, on March 12, 2018, Defendant FARUDI, on behalf of and

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

representing all Defendants, emailed Plaintiff stating the details of one deal which "is a simple arbitrage deal and ***guaranteed*** money." (emphasis original).  In order to defraud Plaintiff, Defendants referenced other deals they had entered into with other lenders and investors, and stated that for those "all worked out exactly as advertised."

18.   Most, if not all, of the financing negotiations between Plaintiff and Defendants were conducted via e-mail, telephone, text message, or WhatsApp.  In all of these communications, Defendants would "guarantee", continuously and repeatedly, that there was minimal risk of loss.

19.   While the investors in NCM would change, the concept of the investments, in the disguise of loans, was always the same: (1) FARUDI or DORON would approach Plaintiff and other similarly situated investors, about a "no risk" or minimal risk opportunity with their company, NCM; (2) FARUDI or DORON would request a certain amount of money from Plaintiff in order to allegedly fund NCM's purchase of certain products to fulfill specific purchase orders from NCM's customers; (3) FARUDI or DORON would state that a certain percent return from the sale of the profits was "guaranteed"; and (4) the profits from the sales of the products would be split between NCM and the lender and/or investor.

20.   Defendants induced Plaintiff's investments into NCM for certain purchases of electronic products.  The investment structure guarantees Plaintiff's return of capital and created the partnership between Plaintiff and Defendants. Defendants owe Plaintiff a fiduciary duty.

21.   Even when Defendants represented that Plaintiff's funds would be used for certain purchases, on information and belief, Defendants never so used Plaintiff's funds but kept those funds for themselves to obtain personal gains.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

### The Investment Contracts

22.    Plaintiff believed Defendant's scheme and took seriously the risk-free guarantee in terms of the expected return of capital.  Plaintiff was defrauded into executing with Defendants notes and promissory notes and guarantees ("Investment Contracts").   Defendants successfully made Plaintiff's investments into NCM appear to be loans, with guaranteed interest on principal.  Were Plaintiff aware of the fraudulent scheme and Defendants' true intent to misappropriate Plaintiff's funds for their personal gains, Plaintiff would not have executed the Investment Contracts nor would Plaintiff have invested into Defendants' projects.

23.    These Investment Contracts specified that, NCM, the borrower, "promises to pay to [Plaintiff], IN LAWFUL MONEY OF THE United States of America, the principal sum of [certain amount]" that upon default, the principal amount plus interest "must be delivered into [Plaintiff's] account on or before [a certain date]."

24.    Plaintiff has executed the below Investment Contracts with Defendants:

24.1   March 28, 2018 Promissory Note between FARUDI (Borrower) and Plaintiff (Lender) and April 4, 2018 Guaranty by FARUDI in favor of Plaintiff for $250,000.00 in "principal" and $11,625.00 in "interest";

24.2   May 6, 2018 Promissory Note between FARUDI (Borrower) and Plaintiff (Lender) and May 6, 2018 Guaranty by Farudi in favor of Plaintiff for $420,000.00 in "principal" and $16,800.00 in "interest";

24.3   June 7, 2018 Promissory Note between FARUDI (Borrower) and Plaintiff (Lender) and June 6, 2018 Guaranty by FARUDI in favor of Plaintiff for $600,000.00 in "principal" and $22,800.00 in "interest";

24.4   June 15, 2018 Promissory Note between FARUDI (Borrower) and Plaintiff (Lender) and June 15, 2018 Guaranty by FARUDI in favor of Plaintiff for $250,000.00 in "principal" and $11,250.00 in "interest";

24.5   July 16, 2018 Promissory Note between FARUDI (Borrower) and

017574.00008
32498841.1

Plaintiff (Lender) and July 16, 2018 Guaranty by FARUDI in favor of Plaintiff for $884,050.00 in "principal" and $49,506.80 in "interest";

24.6   August 20, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $933,556.80 in "principal" and $36,408.72 in "interest";

24.7   September 19, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $969,956.52 in "principal" and $38,798.62 in "interest";

24.8   September 28, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $500,000.00 in "principal" and $18,500.00 in "interest";

24.9   October 22, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $1,008,764.00 in "principal" and $37,324.00 in "interest";

24.10 October 29, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $518,500.00 in "principal" and $20,221.50 in "interest";

24.11 November 19, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $1,046,088.41 in "principal" and $37,659.18 in "interest";

24.12 November 26, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $538,721.50 in "principal" and $20,471.42 in "interest";

24.13 December 27, 2018 Promissory Note between DORON and NCM (Borrower) and Plaintiff (Lender) for $1,083,747.59 in "principal" and $43,349.90 in "interest";

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

25.     On information and belief, Defendants never intended to perform their promises made in the Investment Contracts.  Unquestionably, Defendants failed to disclose their true intention and further prevented Plaintiff from discovering their concealed intention by making continuous fraudulent misrepresentations.

26.     Even though the Investment Contracts would use terms such as principal  and interest, the documents always reflected the terms of the investment.

27.     For example, using simplified numbers, when Defendants would pitch an investment deal to Plaintiff, they would state that (1) they had a purchase order from a customer to purchase ten iPhones that they needed to fulfill at the price of $100 per iPhone; (2) they needed an investment of $500 dollars to purchase ten iPhones at the price of $50 per iPhone to sell to the customer; (3) Defendants were guaranteed a 50% return on the sale of the products over a certain number of days by selling the iPhones they purchased for $500 at $1,000 per iPhone; and (4) Defendants and Plaintiff would split the profit of $500 either 50/50 or Plaintiff would receive less, depending upon the deal.

28.     Specifically, FARUDI, on behalf of and representing the Defendants, reached out and emailed Plaintiff on July 3, 2018, suggested "New Arrangement Moving Forward."  In this July 3, 2018 email, Defendants proposed all profits split 50/50 and all interest and profits were recommended to be rolled-over to the next deal, among other things.  Furthermore, Defendants stated that "all funds that come in, 100% goes back to investors until all debts covered" and that "[e]very deal [is] [sic] fully guaranteed".

29.     As     demonstrated     above,     Defendants     made     numerous misrepresentations that the deals were "no risk" and that the buyer of the products had "significantly more exposure" than Defendants (and Plaintiff as the investor).

30.     The fraudulent misrepresentations identified above are typical examples of the misrepresentations that FARUDI and DORON made as to every investment transaction in order to induce Plaintiff to continue to invest with

Defendants throughout 2018 and 2019, with continual promises of substantial "no risk" returns.  To date, Plaintiff has provided Defendants based on their inducements funds totaling $1,318,845.00 as specified in the below table:

| Wire Date | Wire Amount |
|-----------|-------------|
| 4/15/2018 | $250,000.00 |
| 5/7/2018 | $158,375.00 |
| 6/8/2018 | $160,470.00 |
| 6/15/2018 | $250,000.00 |
| 9/28/2018 | $500,000.00 |

## **Defendants' Breach**

31.    When Plaintiff first provided funds to NCM at the beginning of 2018, Plaintiff thought it would be a one-time loan with guaranteed interest.  In fact, at first, NCM returned Plaintiff's loan principal plus Plaintiff's portion of the interest as promised.

32.    However, in May 2018, DORON and FARUDI convinced Plaintiff to keep his funds in NCM instead of pulling the principal and interest out of NCM, as a way to ensure that DORON, FARUDI, and NCM always had access to needed capital. Particularly, in FARUDI's May 2, 2018 emails to Plaintiff, Defendants presented a purported rush deal "[w]e can just roll your funds + profit into it if you like?" because "the funds would be needed so quickly". DORON and FARUDI represented that doing so would result in Plaintiff obtaining an even greater return by "making higher margin", as NCM's business was purportedly doing well and NCM continuously required additional capital to fund new purchases for its wholesale customers.

33.    Plaintiff agreed, relying on the fraudulent misrepresentations by DORON and FARUDI, that if Plaintiff did not pull his funds out of NCM by a

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

certain date during any given quarter, then the interest and profits left in NCM's accounts became additional principal owed to Plaintiff as they would be rolled to the next round. Plaintiff reserved the right to pull funds out of the portfolio at any given time.

34.    When Plaintiff and similarly situated investors brought their concerns to Defendants regarding repayment of their funds loaned and invested, Defendants never failed to provide more fraudulent and empty promises. For instance, on November 9, 2018, FARUDI, on behalf of and representing the Defendants, emailed Plaintiff stating that: "after speaking with Ilan [DORON] and reviewing all the info, I have zero concerns….NOTHING TO HIDE."

35.    Beginning at the end of 2018 or early 2019, Plaintiff realized that he needed to enter into a more formal agreement with NCM setting forth the terms of his financing to NCM. This is because, by this time, Plaintiff had been defrauded into providing Defendants millions of dollars and had kept the funds in NCM's portfolio, to have the interest rolled to the next round as principal and therefore to generate more gains. Plaintiff and other investors began negotiating with NCM a "Working Capital Investment Agreement."

36.    While the Working Capital Investment Agreement was being negotiated by the Parties, Plaintiff continued to finance NCM whenever NCM would bring him another "opportunity." The Parties negotiated the Working Capital Investment Agreement for over a year. Even though the Working Capital Investment Agreement had not been signed, the parties continued to operate and conduct business transactions with one another as if it had been.

37.    In 2020, Defendants informed Plaintiff that Defendants' money had "dried up", and that Defendants did not have the funds to repay the funds Plaintiff had loaned and invested, with the guaranteed interest, as Defendants had continually promised up to that point.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

38.     As evidence of NCM's continuous fraudulent misrepresentations and just one example out of many, on March 11, 2020, FARUDI sent Plaintiff an email that copied DORON stating that "Please be 1000% assured that the business is healthy, no capital is at risk…" and "Again, none of the capital is at risk, we are still making money, but we are obviously generating a lower return on capital due to increased cycle times."

39.     FARUDI, on behalf of and representing all Defendants, also repeatedly reached out to Plaintiff to assure Plaintiff he could continue to rely on Defendants' fraudulent promises regarding repayments.   For instance, on June 27, 2020, FARUDI sent Plaintiff a text message stating that "I assure u. Guarantee it. Don't worry. We are prioritizing ur payments."

40.     To further defraud Plaintiff, Defendants proposed a payment plan on July 9, 2020.  Months after, on October 23, 2020, Defendants proposed and sent to Plaintiff a term sheet for Plaintiff's participation in a creditor pool.

41.     On December 6, 2020, Plaintiff emailed FARUDI and DORON stating that: "I have been amenable to the terms that you have provided me on multiple occasions this year….However, I have not received any communication regarding progress of the terms nor my December payment."   Had Plaintiff known that Defendants never intended to repay all of Plaintiff's funds loaned and invested, Plaintiff would not have agreed to any of the terms or provided further financing to Defendants.

42.     In early 2021, it became apparent that Defendants were not making any effort to pay back the funds Plaintiff had loaned and invested.  On information and belief, Defendants had been using and are continuously using Plaintiff's funds for their personal gains.

43.     Defendants kept defrauding Plaintiff into believing that at least some of the funds would be returned.  For instance, during the early months of 2021, Defendants, through DORON, repeatedly assured Plaintiff that payments would

occur or that Defendants would agree to an assignment for the benefit of creditors. However, none of what Defendants promised occurred and instead there were further excuses, one after another, accompanied with requests that Plaintiff wait a little longer for repayment or an assignment of claims.

44.    To date, Defendants have defrauded Plaintiff into executing at least eighteen (18) Investment Contracts with Defendants and transferring funds to them totaling $1,318,845.00 in principal.  To date, all of these investments have reached their maturity.  However, Plaintiff has received only $18,460.00 in the course of over three (3) years.    Plaintiff is entitled to a repayment of no less than $2,657,023.35, pursuant to the Investment Contracts, plus interest. Plaintiff's funds loaned and invested are further detailed below:

| Due Date | Total Out-of-pocket | Annual Interest | Total Interest | Total Coming Back |
|---|---|---|---|---|
| - | $250,000.00 | $11,625.00 | $11,625.00 | $261,625.00 |
| - | $408,375.00 | $31,155.00 | $31,155.00 | $439,530.00 |
| 7/9/2018 | $568,845.00 | $53,955.00 | $53,955.00 | $622,800.00 |
| 7/18/2018 | $818,845.00 | $65,205.00 | $65,205.00 | $884,050.00 |
| 8/16/2018 | $818,845.00 | $114,711.80 | $114,711.80 | $933,556.80 |
| 9/19/2018 | $818,845.00 | $151,120.52 | $151,120.52 | $969,965.52 |
| 10/22/2018 | $818,845.00 | $189,919.14 | $189,919.14 | $1,008,764.14 |
| 10/29/2018 | $1,318,845.00 | $208,419.14 | $208,419.14 | $1,527,264.14 |
| 11/21/2018 | $1,318,845.00 | $245,743.41 | $245,743.41 | $1,564,588.41 |
| 12/3/2018 | $1,318,845.00 | $265,964.91 | $265,964.91 | $1,584,809.91 |
| 12/27/2018 | $1,318,845.00 | $303,624.09 | $303,624.09 | $1,622,469.09 |
| 1/4/2019 | $1,318,845.00 | $324,095.51 | $324,095.51 | $1,642,940.51 |
| 1/26/2019 | $1,318,845.00 | $43,349.90 | $367,445.41 | $1,686,290.41 |
| 2/8/2019 | $1,318,845.00 | $64,040.04 | $388,135.55 | $1,706,980.55 |
| 2/28/2019 | $1,318,845.00 | $111,941.69 | $436,037.19 | $1,754,882.19 |
| 2/28/2019 | $1,318,845.00 | $128,178.41 | $452,273.92 | $1,771,118.92 |
| 3/31/2019 | $1,318,845.00 | $191,053.13 | $515,148.64 | $1,833,993.64 |
| 4/30/2019 | $1,318,845.00 | $255,059.51 | $579,155.02 | $1,898,000.02 |
| 5/31/2019 | $1,318,845.00 | $322,438.51 | $646,534.02 | $1,965,379.02 |
| 6/30/2019 | $1,318,845.00 | $393,781.77 | $717,877.28 | $2,036,722.28 |
| 7/31/2019 | $1,318,845.00 | $465,881.74 | $789,977.25 | $2,108,822.25 |
| 8/31/2019 | $1,318,845.00 | $539,901.40 | $863,996.91 | $2,182,841.91 |

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

| 9/30/2019 | $1,318,845.00 | $616,737.43 | $940,832.94 | $2,259,677.94 |
| 10/31/2019 | $1,318,845.00 | $696,730.03 | $1,020,825.54 | $2,339,670.54 |
| 11/30/2019 | $1,318,845.00 | $778,852.47 | $1,102,947.98 | $2,421,792.98 |
| 12/31/2019 | $1,318,845.00 | $864,099.58 | $1,188,195.09 | $2,507,040.09 |
| 1/31/2020 | $1,318,845.00 | $952,096.69 | $1,276,192.20 | $2,595,037.20 |
| 2/29/2020 | $1,318,845.00 | $1,032,542.84 | $1,356,638.35 | $2,675,483.35 |
| 3/30/2020 | $1,318,845.00 | $1,032,542.84 | $1,356,638.35 | $2,675,483.35 |

## FIRST CAUSE OF ACTION

### (FOR FRAUD – FALSE PROMISE)

45.     Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 44, inclusive, as though said allegations were fully set forth at length herein.

46.     Defendants made multiple and continuous promises to Plaintiff through the execution of the Investment Contracts.

47.     Defendants never intended to perform their promises pursuant to the Investment Contracts when they entered into these contracts with Plaintiff.

48.     Defendants intended that Plaintiff rely on Defendants' fraudulent promises under the Investment Contracts.  Worse, Defendants' fraudulent promises were continuous and led to the execution of multiple Investment Contracts and further detriment to Plaintiff.

49.     Plaintiff replied on Defendants' false promises and kept providing funds to finance NCM.

50.     Defendants failed to perform their promised acts in that Defendants failed to repay Plaintiff his investment funds with interests and profits.

51.     As a direct and proximate result of Plaintiff's reliance on Defendants' fraudulent scheme, Plaintiff has been harmed and has not been repaid in full for the loans and investments made to Defendants.

52.     Plaintiff's reliance on Defendants' fraudulent promises was a substantial factor in causing Plaintiff's harm.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

## SECOND CAUSE OF ACTION

### (FOR BREACH OF FIDUCIARY DUTY OF UNDIVIDED LOYALTY)

53.   Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 52, inclusive, as though said allegations were fully set forth at length herein.

54.   Defendants induced Plaintiff's investments into NCM for certain purchases of electronic products.  The investment structure guaranteed Plaintiff's return of capital and created the partnership between Plaintiff and Defendants. Defendants owe Plaintiff a fiduciary duty.

55.   Defendants knowingly and continuously misappropriated Plaintiff's funds for personal gains.  Defendants' actions were against Plaintiff's interest in connection with Plaintiff's multiple and continuous payments to NCM and the investment structure/partnership.

56.    Plaintiff never gave informed consent to Defendants' conduct as to keeping Plaintiff's funds for Defendants' personal benefits.

57.   As a direct and proximate result of Defendants' breach of their duty of undivided loyalty, Plaintiff has not been repaid in full for his loans and investments to Defendants.  Defendants' breach of their fiduciary duty was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### (FOR BREACH OF INVESTMENT CONTRACTS)

58.   Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 57, inclusive, as though said allegations were fully set forth at length herein.

59.   The Investment Contracts specified that, NCM, the borrower, "promises to pay to [Plaintiff], in lawful money of the United States of America, the

principal sum of [certain amount]" that upon default, the principal amount plus interest "must be delivered into [Plaintiff's] account on or before [a certain date]."

60.     At all times relevant herein, Plaintiff has duly performed all covenants, conditions and obligations to be performed on his part under the Investment Contracts, except as such performance was rendered superfluous or prevented or excused by acts or omissions of Defendants, or by acts or omissions of those for whose acts and omissions Defendants are responsible, or by force majeure, or by impossibility, by impracticality, by frustration or prevention by acts of government entities or inspectors; or except as such performance was waived by acts or omissions of Defendants or except as Defendants by acts or omissions, are estopped to rely upon any failure of Plaintiff to perform.

61.     Plaintiff is informed and believes, and thereupon alleges, that Defendants breached the Investment Contracts, *inter alia*, by failing to deliver Plaintiff's principal funds plus interest into Plaintiff's account upon default of the respective loans and investments.

62.     As a direct and proximate result of the breaches set forth above, Plaintiff has not been repaid in full on his loans and investments to Defendants. Defendants' breach of the Investment Contracts was a substantial factor in causing Plaintiff's harm.

## FOURTH CAUSE OF ACTION
## (FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

63.     Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 62, inclusive, as though said allegations were fully set forth at length herein.

64.     Plaintiff and Defendants executed the Investment Contracts starting from early 2018.  Every contract imposes the duty of good faith and fair dealing

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

upon the parties in performance and enforcement of the contracts, here, the Investment Contracts.

65. Defendants have acted in bad faith by misrepresenting to Plaintiff about borrower NCM's financial status.

66. Further, Defendants have wrongfully and intentionally breached the duty of good faith by defrauding Plaintiff into further providing funds to finance NCM.

67. As a direct and proximate result of the breach of the covenant of good faith and fair dealing, Plaintiff has not been repaid in full on his loans and investments to Defendants. Had Plaintiff known Defendants never intended to pay back the funds, Plaintiff would not have executed the Investment Contracts and ceased working on providing more funds to Defendants.

68. Defendants' breach of the Investment Contracts was a substantial factor in causing Plaintiff's harm.

## FIFTH CAUSE OF ACTION
### (FOR UNJUST ENRICHMENT)

69. Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 68, inclusive, as though said allegations were fully set forth at length herein.

70. Defendants owe a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit wrongful acts in order to unjustly enrich themselves at Plaintiff's expense and detriment or at the expense and detriment of Plaintiff's property or financial interests.

71. Defendants unjustly enriched themselves by wrongfully misappropriating, converting, taking, utilizing or managing the property and financial interests of Plaintiff.

72. Defendants received a benefit that they otherwise would not have

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

achieved.

73.    Defendants' acts and omissions leading to Defendants' unjust enrichment were the actual and proximate cause of harm to Plaintiff.  In particular, believing the funds loaned and invested in NCM would be repaid, Plaintiff continued provide financing to Defendants throughout the past three (3) years.

74.    Plaintiff demands restitution and judgment against Defendants in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

**(FOR UNFAIR COMPETITION IN VIOLATION OF**

**BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ. )**

75.    Plaintiff refers to and incorporates by reference the allegations of Paragraphs 1 through 74, inclusive, as though said allegations were fully set forth at length herein.

76.    Business and Professions Code section 17200 et seq. (the Unfair Competition Law or UCL) prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code 3 section 17500 et seq.

77.    Defendants violated the UCL by engaging in unlawful, unfair, and fraudulent business acts or practices, including but not limited to: (a) knowingly and intentionally defrauding Plaintiff into executing the Investment Contracts; (2) making and/or disseminating false, misleading, and deceptive statements to the public.

### PRAYER

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    For the repayment of Plaintiff's funds with agreed-upon interest;

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610

2.     For attorneys' fees, costs and expenses Plaintiff incurred herein;

3.     For interest as provided by law;

4.     For punitive damages as the Court may deem just and proper;

5.     For equitable relief under Business and Professions Code, sections 17203, 17204 and 17535 and the equitable powers of this Court, Defendants, together with their successors and assignees and all persons who act in concert with them or on their behalf, be permanently enjoined from engaging in any of the unlawful, unfair and fraudulent business acts and practices and deceptive advertising described in this Complaint; be required to take such actions and adopt such measures as are necessary to prevent Defendants from engaging in any further such acts, practices and advertising and be ordered to restore to any person any money or property that Defendants may have acquired by means of the unlawful, unfair and fraudulent business acts and practices and deceptive advertising described in this Complaint.

6.     For civil penalty under Business and Professions Code section 17206, Defendants be assessed a civil penalty in the amount of $2,500 for each violation of the UCL, according to proof.

7.     For such other and further relief as the Court may deem just and proper.

Dated: April 22, 2021

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _Damian J. Martinez_

Damian J. Martinez
Attorneys for Plaintiff Andrew Berman

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
201 SOUTH LAKE AVENUE, SUITE 300
PASADENA, CALIFORNIA 91101-4869
TELEPHONE: (626) 583-8600
FAX: (626) 583-8610